## IN THE UNITED STATES DISTRICT COURT

## FOR EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH "GMIRLENIS@ICLOUD.COM," "CASTIURKA@AOL.COM," "JEZLNEG@ICLOUD.COM," "MIRLENIS2000@ICLOUD.COM," AND FCHRIS1994@GMAIL.COM, THAT ARE STORED AT PREMISES CONTROLLED BY APPLE, INC.** | **CASE NO. 26-MJ-1318** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE

I, James C. Hughes, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts, "gmirlenis@icloud.com," "castiurka@aol.com," jezlneg@icloud.com, "mirlenis2000@icloud.com," and "fchris1994@gmail.com" ("**TARGET ACCOUNTS**") that are stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.    I am a Special Agent (SA) with the United States Department of Justic (DOJ), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been for approximately eight and half years. I am a graduate of the Criminal Investigators Training Program (CITP) in Glynco, Georgia. I am currently assigned to a specialized enforcement group, the ATF Philadelphia Group VI Violent Crimes Task Force (VCTF), whose primary mission is to investigate those individuals and groups that are engaged in the commission of federal firearms and narcotics violations. Additionally, our task force is a High Intensity Drug Trafficking Area Group (HIDTA) Group, meaning we also specialize in the investigation of narcotics-related offenses of federal firearms laws, particularly criminal organizations engaged in ongoing narcotics distribution and trafficking conspiracies. During my tenure as an agent with ATF, I have participated in investigations of the above on numerous occasions.

3.    As part of my regular duties, I have carried out several investigations that have involved the analysis of cellular phones and both current and historical cellular telephone data/records.  I have conducted investigations involving cellular device information, including the use of historical "cell-site" location information.  Through my experience, I know that individuals involved in criminal activity, specifically the illicit purchase and sale of firearms and/or narcotics, often use their cell phones before, during, and after the commission of crimes. Through my training and experience, I am also familiar with the actions, habits, traits, methods, and terminology utilized by violent criminal offenders as well as firearm and narcotics traffickers and possessors.  I am familiar with federal search warrants and seizing evidence in accordance with the probable cause set forth in the affidavits.  I have authored and executed federal search warrants in the past.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement personnel, witnesses, records, and surveillance video. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all my knowledge about this matter or Christopher FERNANDEZ. I have set forth only those facts I believe are essential to establish the necessary foundation for the search of the **TARGET ACCOUNTS**. This affidavit does not exhaust my knowledge, or that of other agents, of the facts and circumstances surrounding this investigation

5. Based on the facts set forth in this affidavit, there is probable cause to believe FERNANDEZ committed the crimes of carjacking in violation of 18 USC § 2119, kidnapping in violation of 18 USC § 1201(a) (2 counts), using, carrying and brandishing a firearm during and in relation to a crime of violence in violation of 18 USC § 924(c)(1)(A)(ii), and aiding and abetting in violation of 18 USC § 2 (hereafter "Subject Offenses"). There is also probable cause to search **TARGET ACCOUNTS** described below and in Attachment A for evidence of the Subject Offenses further described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE FOR ISSUANCE OF THE WARRANT**

7.      On or about June 3, 2024, the Philadelphia Police Department (PPD) received an emergency call regarding a robbery. PPD 15th District personnel responded to the call and, in summary, the investigation was referred to the PPD's Special Victims Unit (SVU), due to the fact the victims stated they had been carjacked, kidnapped, and robbed at gunpoint by several individuals. During the carjacking/robbery ten "skills machines," a firearm, cell phones, and the victim's rented U-Haul were taken.  The victims had their hands zip-tied behind their backs, had bags placed over their heads, were forced into a vehicle, and transported several miles away from the scene and dropped off in a cemetery.

8.      Your affiant adopted the investigation federally and, on or about May 22, 2025, received a True Bill of Indictment in the Eastern District of Pennsylvania against FERNANDEZ and others.[1] Thus there is probable cause to believe that FERNANDEZ committed the charged crime.

9.      Further investigation by your affiant and PPD SVU personnel indicated FERNANDEZ was likely residing outside the Commonwealth of Pennsylvania at the time of his indictment and had been splitting time between Florida and Pennsylvania. As a result, your affiant referred the matter of FERNANDEZ's arrest to the ATF Miami Field Division personnel who assisted the USMS in safely arresting FERNANDEZ on or about June 3, 2025. FERNANDEZ was extradited to the EDPA following his arrest.

---

[1] FERNANDEZ was charged federally in EDPA with violating 18 USC § 2119 (Carjacking); 18 USC § 1201(a) (kidnapping)(2 counts); 18 USC § 924(c)(1)(A)(ii) (using, carrying and brandishing a firearm during and in relation to a crime of violence) and 18 USC § 2 (Aiding and Abetting).

10.     Following FERNANDEZ's arrest, ATF Miami Field Division personnel sent your affiant a cellular phone which was in the possession of FERNANDEZ at the time of his arrest via private and secure carrier with a monitored tracking number. Your affiant obtained the cellular phone which remained in ATF custody, on a charger and in "airplane" mode. Upon receipt, I observed FERNANDEZ's cellular phone had a magnetic bifold wallet attached to the back of it, and that the wallet contained a State of Florida identification card for FERNANDEZ.

11.     Your affiant, with assistance from the United States Attorney's Office (USAO) in EDPA, applied for and was granted a federal search warrant for the cellular phone on or about May 7, 2026.[2] ATF investigators acting on your affiant's behalf attempted to fully execute that search warrant of the cellular phone on or about May 11, 2026 with assistance from the Commonwealth of Pennsylvania, Office of the Attorney General (PA-OAG) Gun Violence Task Force (GVTF). In summary, investigators assisting your affiant determined and relayed to  your affiant that the Apple, Inc., cellular phone was in "before first unlock" (BFU)[3] status, and therefore what would otherwise be a full physical extraction of the data contained therein was limited to a selection of items, including itemizing the **SUBJECT ACCOUNTS** as likely iCloud backup locations.

12.     The partial extraction also identified the device as an Apple, Inc., iPhone 16 Pro Max with serial number JM2R9J7NDV and IMEI number 353484627363673 and was equipped with iOS/operating system version 18.5. The "Owner Name" was listed as "FF SAVAGE."

---

[2] EDPA Case Number 26-MJ-875; granted by The Honorable Magistrate Judge Craig M. Straw.

[3] Modern cellular telephones and their operating systems may utilize what may be described as layered security measures to enhance security for the end user. In the case of FERNANDEZ's phone, the phone had either been restarted, turned off and turned back on at a later date, or is equipped with an operating system ("OS") which, after a period of time, automatically requires a passcode to be reentered. This forces the cellular telephone into BFU mode, limiting the amount of information usage of forensic equipment may obtain.

13.    In addition to the files and directories stored on the physical phone, I know the phone, being an Apple, Inc., iPhone, is linked to the **TARGET ACCOUNTS**, which are email addresses and an "iCloud" internet backup with a unique email address. That information which may be contained in that phone and may lead to further investigative efforts to obtain critical evidence is likely also contained within the iCloud **TARGET ACCOUNTS**.

14.    Also included within the selection of items provided by the attempted extraction of the cellular phone data from the physical device was a date of "last backup," indicating an iCloud backup date of "2024-12-12," approximately six months after the events of the Subject Offenses.

15.    Previously during the investigation, your affiant reviewed the results of a cell phone extraction from co-defendant Edwin APONTE which indicated that FERNANDEZ and APONTE had cell phone communications (text messages and phone calls) in the days before and the weeks after the crimes were committed on June 3, 2024, which strongly suggest they are related to the charges in the indictment. Among the many text messages on June 2, 2024, APONTE and FERNANDEZ exchanged texts regarding needing to make money.  Between June 8, 2024, and June 12, 2024, APONTE exchanged texts with FERNANDEZ referring to picking up and selling "the machine."  On June 15, 2024, after co-defendant POLANCO-LOPEZ was arrested by PPD SVU, APONTE and FERNANDEZ exchanged text messages seeming to refer to POLANCO-LOPEZ's arrest with APONTE saying, "I hope he don't tell."  FERNANDEZ responded, "if that was ever a question everything should have been deaded." To which APONTE responded, "so you think he got booked for something else?"

16.    Based on those facts, and based on my own professional and personal experience, I know that items stored in cellular telephones often last years. Some items, like photographs,

text messages conversations, and application data, may be backed up and restored to new devices, while stored on the same account(s) associated with the end user. Ultimately, the **TARGET ACCOUNTS** are likely to contain data from additional devices from the time of the criminal activity alleged, even if the data came from a device that was not in the possession of your affiant but may have been in the possession of FERNANDEZ at the time of the alleged offenses.

17.    I know that criminal actors often store contact lists, address books, calendars, photographs, video and audio files, text messages, call logs, and voicemails in their cell phones that can give insight into their co-conspirators and associates. Cellular telephones also contain address books with names, addresses, photographs, and phone numbers of a person's regular contacts.  I am aware criminal actors frequently list associates or co-conspirators in directories, often by nickname, or to avoid detection by others.  Such directories as the ones likely contained in the cellular phone, are one of the few ways to verify the numbers being used by specific criminal actors.

18.    There is probable cause to believe that communications and related data from around the time of the robbery/carjacking on June 3, 2024 until FERNANDEZ's arrest in Florida on June 3, 2025 stored in iCloud digital backups associated with the **TARGET ACCOUNTS**, will provide further evidence of his crimes, and evidence against other perpetrators he may be associated with in committing his crimes. I know that those involved in criminal acts communicate with associates or co-conspirators using cellular telephones to make telephone calls. In addition, I know those involved in criminal offenses involving more than one person communicate with associates or co-conspirators using cellular telephones to send e-mails and text messages. By analyzing call and text communications, agents can determine the identity of

7

co-conspirators and associated telephone numbers, as well as if there were communications between associates before, during, or after the commission of the crimes.

19.     In addition, I know that those committing crimes often take photographs or make videos of themselves and their co-conspirators and retain them on their electronic devices such as cellular telephones. This evidence would show associations between accomplices, i.e., photographs of accomplices and/or individuals common to co-conspirators. Based on our training and experience, those who commit these crimes often store these items on their phones to show to associates, and/or to upload to social media.

20.     I also know iCloud backups do not necessarily overwrite all data as they are updated and backed up by the end user. Therefore, despite the time of approximately six months having passed between when the Subject Offenses occurred and the backup date, as well as the time between the backup date and the federal arrest of FERNANDEZ, it is likely there is still evidence contained within the iCloud digital backup of FERNANDEZ's **TARGET ACCOUNTS**.

## BACKGROUND CONCERNING APPLE[4]

82.      Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

83.      Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.      Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.      iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.      iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo

---

[4]      The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Manage and use your Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "Introduction to iCloud," available at https://support.apple.com/kb/PH26502; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; and "Apple Platform Security," available at https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.

Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d.    Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.    Find My allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of iOS devices, as well as share their location with other iOS users. It also allows owners of Apple devices to manage, interact with, and locate AirTags, which are tracking devices sold by Apple.

f.    Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.    App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be

10

purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

84.    Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  The account identifier for an Apple ID is an email address, provided by the user.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

85.    Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

86.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "capability query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the "Find My" service, including connection logs and requests to remotely find, lock, or erase a device, are also maintained by Apple.

87.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through iCloud.com and Apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

88.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Some of this data is stored on Apple's servers in an encrypted form but may nonetheless be decrypted by Apple.  Records and data associated with third-party apps, including the instant messaging service WhatsApp, may also be stored on iCloud.

89.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

90.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often

created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

91.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

92.    Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

93.    Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

94.    Based on the forgoing, I request that the Court issue the proposed search warrant.

95.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the

execution of the requested warrant at any time in the day or night.

Respectfully Submitted,

*/s/ James C. Hughes*
James C. Hughes
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn telephonically on_____, 2026

_____
CAROLINE GOLDNER CINQUANTO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **"GMIRLENIS@ICLOUD.COM,"**

**"CASTIRUKA@AOL.COM," "JEZLNEG@ICLOUD.COM,"**

**"MIRLENIS2000@ICLOUD.COM," AND "FCHRIS1994@GMAIL.COM"** ("TARGET

ACCOUNTS") that is stored at premises owned, maintained, controlled, or operated by Apple

Inc., a company headquartered at One Apple Park Way, Cupertino, California.

**ATTACHMENT B**

**Particular Things to Be Seized**

## I.    Information to be disclosed by Apple Inc. ("Apple")

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple.  Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers

("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.        The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.        The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.        The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.        All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging

and capability query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My and AirTag logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.    All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with AirTags, Location Services, Find My, and Apple Maps;

h.    All records pertaining to the types of service used;

i.    All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within fourteen days of issuance of this warrant.

19

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence, and instrumentalities of violations of: carjacking in violation of 18 USC § 2119, kidnapping in violation of 18 USC § 1201(a), using, carrying and brandishing a firearm during and in relation to a crime of violence in violation of 18 USC § 924(c)(1)(A)(ii), and aiding and abetting in violation of 18 USC § 2, which occurred on or about June 3, 2024, including, for each account or identifier listed on Attachment A, information pertaining to the following matters for the period May 15, 2024 through his arrest on June 3, 2025:

a.     Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

b.     Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

c.     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

d.     The identity of the person(s) who communicated with the user ID about matters relating to the carjacking, including records that help reveal their whereabouts.  This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") may deliver a complete copy of the disclosed electronic data to the custody

and control of attorneys for the government and their support staff for their independent review.

42

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Apple Inc. ("Apple"), and my title is

_____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Apple.  The attached records consist of _____.  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Apple, and they were made by Apple as a regular practice; and

b.      such records were generated by Apple's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Apple in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Apple, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                               Signature